322 So.2d 362 (1975)
STATE of Louisiana, Through DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
Reginald M. MANNING, Defendant-Appellant.
No. 12736.
Court of Appeal of Louisiana, Second Circuit.
November 6, 1975.
*363 Burnett, Harrison, Sutton & Walker by Bobby D. Sutton, Shreveport, for defendant-appellant.
D. Ross Banister, William W. Irwin, Jr., Jerry F. Davis, Bernard L. Malone, Jr., Johnie E. Branch, Jr., Jeanette M. Faust, Ed A. Michel, Baton Rouge, for plaintiff-appellee.
Before PRICE, DENNIS and MARVIN, JJ.
PRICE, Judge.
This appeal arises out of an expropriation by the State of Louisiana through the Department of Highways of a portion of defendant's property necessitated by the construction of a westbound entrance ramp onto Interstate 20 from the Pines Road in the extreme western sector of Shreveport.
Prior to the expropriation under the "quick taking statute" on May 29, 1974, defendant, Reginald M. Manning, owned a 2.02 acre tract fronting on the south side of U. S. Highway 80 (Greenwood Road) some 350 feet west of its intersection with the Pines Road. This tract was in the shape of a trapezium and abutted Interstate 20 on its south boundary for a distance of 400.75 feet. It had a frontage on U. S. Highway 80 of 379.93 feet and a depth on its west side of 289.84 feet. The easterly depth was 167.73 feet. Defendant operated an antique shop in a combination brick and frame building situated on the westerly portion of the property. A chain link fence surrounded the building on the sides and rear for security purposes.
The taking from the rear portion of the tract bordering I-20 comprised .907 of an acre with a depth of 56.15 feet on the westerly side expanding to 145.36 feet on the east side of the tract. The building was not within the area of the taking and the only improvements to be compensated for are 80 feet of septic sewer field lines, 20 feet of chain link fence and 150 feet of 1 inch gas line.
After the completion of construction on this project defendant's property will be located in the northwest quadrant of the *364 Pines Road Interchange but will no longer abut Highway 80. This highway is to be rerouted in the vicinity of defendant's property and will run some 300 feet north in its realignment. The prior alignment of the highway will become a dead-end street. Along a portion of the old road on which defendant's property will continue to front, a controlled barrier will affect the easterly 100 feet. Access from the new alignment of Highway 80 will be provided by a boulevard type crossover or road leading directly to defendant's property.
The State deposited the sum of $9,757 as just compensation for the land and minor improvements taken. No amount was deposited for severance damages.
Defendant answered the proceeding, asking for an increase in the value of the land and improvements taken to $20,855 and for severance damages of $18,212.
After a trial on the merits the district court awarded defendant the sum of $19,754.50 for the land taken and $750 for improvements. Defendant's claim for severance damage was rejected. The fees of defendant's two expert witnesses were fixed at $200 each for preparatory work, and $100 for their court appearance.
Defendant has appealed, alleging the trial judge erred in not awarding severance damages and in fixing an inadequate amount for the expert witness fees.
The State has answered the appeal, asking that the judgment be modified to reduce the amount awarded by the trial judge as value of the land taken.
We shall first review the finding of the trial court on the value of the land taken.
In determining the market value of the subject property the trial judge was presented with the testimony of two real estate appraisers for the State, James C. McNew of Ferriday, and Byron Core of Crowley, who appraised the land value at approximately $10,000 an acre, or 27½ cents per square foot as opposed to the opinions of defendant's appraisers, O. L. Jordan and Frank W. Grigsby of Shreveport, that the value is 50 cents per square foot. All of these appraisers used the market data and comparison approach to arrive at estimates of market value. The tremendous difference in their conclusions results from variations in the selection of sales deemed comparable to the subject property.
The State contends the appraisals of Jordan and Grigsby which were accepted by the trial judge on land values were not as reliable as the opinions of its experts as the evidence shows they were not well grounded.
Without discussing in detail the various sales selected by the several witnesses as comparable to the property under study, we find no abuse of the discretion accorded the trial judge in accepting the opinions of value expressed by Jordan and Grigsby over the State's appraisers.
The record indicates Jordan and Grigsby worked independently of one another and used different transactions entirely as comparable sales on which to evaluate market value. Both arrived at the unit price of 50 cents per square foot for commercial property similar to defendant's in this vicinity. Grigsby had previously made an appraisal on this property a short time before for Arkansas-Louisiana Gas Company in connection with the relocation of a gas line on the rear of the tract. He then arrived at this same estimate while working for a party with a contrary interest to that of defendant.
While some of the sales selected by these appraisers may be questioned as being true comparables to the subject property to be entitled to much weight, our review of all the transactions utilized by them lead us to the opinion that the trial judge was within his discretion in accepting and relying on their estimates of market value.
*365 Defendant contends the trial court should have awarded him severance damages because the preponderance of the evidence in the record shows the following circumstances will adversely affect the market value of the remainder of his property after the taking:
1. The substantial loss of highway frontage and circuitous means of access resulting from the relocation of U. S. Highway 80.
2. The reduction in size and change in shape of the property which affects the value and usefulness of the westerly area on which the building is situated and precludes the possibility of the sale of the easterly undeveloped portion of the tract as a separate commercial site.
3. The loss of available space at the rear of defendant's business to maintain an outdoor advertising billboard visible to traffic proceeding on I-20 as existed prior to the taking.
Although defendant's property no longer has direct frontage on a major highway as it enjoyed prior to the taking, it does have a reasonable means of access from the relocated highway and under the jurisprudence we do not find this change to be a compensable element of damage. Patin v. City of New Orleans, 223 La. 703, 66 So.2d 616 (1953); State of Louisiana, through Department of Highways v. Salassi, 244 So.2d 871 (La.App. 1st Cir. 1971); State of Louisiana, through Department of Highways v. Beauregard Development Co., Inc., 279 So.2d 787 (La.App. 3rd Cir. 1973).
Defendant's appraisers, Jordan and Grigsby, followed a method of dividing the property into two tracts in the evaluation of the before and after market value. They contend the west portion containing 51,784 square feet prior to the taking, on which the building is situated, was of sufficient size to accommodate a small commercial venture such as its present use as an antique shop, and that the remaining undeveloped portion to the east side, containing 36,207 square feet, was surplus and available for sale as a separate commercial business site. They were further of the opinion that the loss of the rear portion adversely affected the market value of the westerly tract by 25% and the easterly tract by 50%.
The State appraisers disagreed with the theory of dividing the property into parts to determine severance damages as they contend the entire tract was being put to a single use by defendant at the time of the taking, although somewhat excessive in size for this purpose. They further contend that any severance damage which may be assigned because of a reduction in size or shape of the property is offset by the increase in market value which will accrue to the remainder by being situated in the quadrant of an interstate interchange.
The trial judge rejected defendant's request for severance damages, and although his reasons do not discuss in detail the basis on which he arrived at this decision, we must assume he found the State appraisers' testimony in this regard to be acceptable and that defendant had not borne the burden of proving his claims for these items of damage.
Defendant argues on this appeal that the State appraisers' opinions that the remainder of defendant's property will sustain an increase in value by being in the interchange quadrant is without proper basis as they have relied on transactions at the Monkhouse Drive interchange for their conclusion and that interchange is not comparable to the subject Pines Road interchange. We find the testimony of defendant's witnesses to acknowledge this difference and that it was properly compensated for in their conclusions. They were each of the opinion the price per square foot of defendant's remaining land would almost double in value after the construction of the interchange.
*366 Nor do we find the testimony of Jordan and Grigsby to establish with any degree of legal certainty that any actual damage will occur to the remainder. Under the circumstances presented the division of defendant's property into two separate tracts for the purpose of ascertaining severance damages is not appropriate. There is no evidence in the record that the tract was intended to be subdivided into two separate tracts prior to the expropriation proceedings.
The trial judge denied defendant's claim for damages resulting from a loss of outdoor advertising space on finding that the billboard presently being used by him was on property belonging to the Department of Highways.
Defendant does not argue this factual finding in brief to this court. The thrust of his argument seems to be that he has now lost the only area of the rear portion of his property on which an outdoor sign could be erected that would be visible from both directions of travel on I-20 without constructing an elevated sign of some eighteen feet in height or more.
We know of no authority, and have not been cited to any by counsel for defendant, to make a separate award for such an item of alleged damage. Defendant's appraisers did not give this factor any consideration in their determination of the before and after valuation of the property. Such an item of damage must necessarily be absorbed into the reduction of the market value of the remainder after the taking by the expropriating authority. We therefore feel constrained to affirm the trial judge's disallowance of this item of damage.
Defendant also asks that we modify the judgment to allow a total of $1,100 for the taking of the minor improvements situated within the area of the taking, such as field line, fencing and service gas line. The testimony regarding the value of these items ranged from a low of $443 through $1,100. There does not appear to be any abuse of discretion by the trial judge in fixing the sum of $750 for these items.
Defendant also requests this court to increase the fees awarded defendant's expert witnesses by the trial judge. The court awarded $200 for preparatory work and the sum of $100 for each witness for his court appearance. Defendant asks for this to be increased to the amount charged him by these experts. Jordan's charges were $650 for preparation; $150 for pretrial conference, and $150 for a court appearance. Grigsby billed defendant for $350 for preparation; $125 for pretrial conference, and $150 for a court appearance.
The amount charged the landowner is not the criterion to be followed by the court in fixing expert witness fees. Nor can defendant claim the charges made by the expert for time spent in consultation with his legal counsel prior to trial. See State through Department of Highways v. Beaird-Poulan, Inc., 292 So.2d 842 (La. App.2nd Cir. 1974); State through Department of Highways v. United Pentecostal Church of Hodge, 313 So.2d 886 (La.App. 2nd Cir. 1975). There is no evidence in the record to show that these witnesses spent any unusual amount of time or expenditures which would show an abuse of the discretion accorded the trial judge in fixing the fees of expert witnesses.
It has been pointed out by both parties to this appeal that the judgment signed by the trial court inadvertently omitted to give the State credit for the sum previously deposited and withdrawn by defendant.
The judgment is therefore amended to allow the State of Louisiana a credit of $9,757 on the total judgment rendered against it of $20,505, and as amended the judgment is affirmed.