ROBERT A. CHAISSON, Judge.
|Jn this medical malpractice suit, plaintiff Keyoka Davis appeals two judgments of the trial court: the first, signed on March 9, 2015, adopts the judgment of the jury which found that defendants, Dr. Barton Barre, D.D.S. and Barre Dental Care, Inc., did not fail to use reasonable care and diligence when treating Ms. Davis and decreed that Ms. Davis would bear costs. The second judgment, signed on August 5, 2015, granted defendants’ Rule to Tax Costs in the amount of $19,592.26. For the reasons that follow, we affirm both judgments of the trial court.
FACTS AND PROCEDURAL HISTORY
On September 22, 2011, Ms. Davis went to Barre Dental Care for jaw and tooth pain. During the initial consultation, Ms. Davis informed Dr. Barre that she heard a “pop” while eating. An initial periapical x-ray was taken which indicated a broken, split in half # 18 tooth, infection, and bone loss around the tooth. Dr. Barre ^attempted an extraction of the broken tooth. In the process of the extraction, he noticed movement in the mandible. Dr. Barre stopped the extraction procedure and took another radiograph which indicated a fractured jaw most likely displaced by extraction efforts. Ms. Davis was immediately referred to the emergency room at LSU Medical Center where she was admitted and treated that same day. Oral surgeons attempted unsuccessfully to extract the broken # 18 tooth. Ms. Davis’ jaw was wired shut.- Subsequent surgery *282 on September-29, 2011, resulted in a successful extraction of the broken tooth and internal fixation of the mandibular fracture. ■
On August 20, 2012⅛ Ms, Davis filed a complaint with the Louisiana Division of Administration against Dr. Barre and Barre Dental Care, Inc. alleging medical malpractice. A medical review panel was thereafter convened. * On February 24, 2014, the medical review -panel rendered its unanimous opinion in which it found that neither Dr. Barre nor Barre Dental Care, Inc. failed to comply with the appropriate standard of care. The panel members -determined that Dr. Barre’s diagnosis of non-restorable # 18 tooth. with a chronic periapical abscess and bone, loss was reasonable. The panel also found that extraction of the booth was a reasonable treatment option, and that the patient’s reported history did not present any contraindications to that treatment plan. Dr. Barre’s actions in stopping the extraction upon noticing abnormal movement of the mandible, taking a second x-ray, and subsequently referring the patient to a specialist were all within the standard of care, according to the medical review panel.
On March 11, 2014, Ms. Davis filed a petition, for damages. against Dr. Barre and Barre Dental Care, Inc. The case proceeded to jury trial on January 13, 2015. On the third day of the trial, the jury returned.a unanimous verdict in favor of defendants.
I ¿On appeal, Ms, Davis raises two assignments of error: (1) the jury was. clearly wrong in answering “no” to the question “Do you find by a preponderance of the evidence that Dr. Barre and Barre Dental Care failed to use reasonable care and diligence when treating Keyoka;” and, (2) the trial court abused its discretion in awarding costs to a non-party.
LAW AND ANALYSIS
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). In order to reverse the factfinder’s determinations, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of-the trial court,- and that the record establishes that the finding is clearly wrong. Id, Where there' is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Where 'there are - two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id,
In a malpractice action based on the negligence of a dentist, the plaintiff shall have the burden of proving: (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised by dentists licensed to practice in the state of Louisiana and actively practicing in a similar community or locale, and under similar circumstances;' (2) that the defendant lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill; and (3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred. La. R.S. 9:2794(A). [KAs this court has previously noted, “[a] physician’s judgment is evaluated' in light of the facts known at the-tim'e of the patient’s treatment, not on the basis of hindsight or information later learned. A physician is not required to exercise the highest degree *283 of care possible, nor is he held to an absolute standard of precision.” Boudoin v. Crawford & Marshall, Ltd., 97-224 (La. App. 5 Cir. 01/14/98), 709 So.2d 798, 808. This statement is equally applicable to dentists. La. R.S. 40:1299.41(A)(7) states:
The standard of care required of every health care provider,- except a hospital, in rendering professional services or health care to a patient, shall be .to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of the profession in good standing in the same community or locality, and to use reasonable care and diligence along with his best judgment, in the application of his skill.
The jury was presented two theories of how Dr. Barre may have breached the standard of care in his treatment of Ms. Davis. First, the standard of care was breached when Dr. Barre failed to diagnose an 'obvious, visible hairline fracture on the first x-ray. Alternatively, the standard of care was breached when Dr. Barre failed to diagnose the hairline fracture on the first x-ray after the patient, (Ms. Davis), had reported recent jaw trauma.
Multiple expert witnesses offered conflicting testimony as to whether the first x-ray shows an obvious hairline fracture. Three witnesses testified for Ms. Davis. Dr, Bernard Landry, a New Orleans-based radiologist, testified that the artifact or lucency on the x-ray is an obvious fracture, but he could not testify that the fracture would have been obvious to a general dentist or oral surgeon. Dr, Edward Levy, a New Orleans-based general dentist, testified that he was able to see the hairline fracture on the first x-ray, and that he believed Dr. Barre did breach the standard of care for a general dentist. Dr. Trevor Treasure, a Houston-based oral and maxillofacial surgeon, testified that he also identified the hairline fracture |fiin the first x-ray, and that nothing else besides a fracture could have caused the straight-line lucency on the x-ray.' Dr. Treasure testified that Dr. Barre did' breach the standard of care by failing to identify the hairline fracture in the-first x-ray.
Three expert witnesses testified for the defense. Dr. Jerome Smith, a general dentist from Lafayette, testified that he did not see a hairline fracture on the first x-ray,and that he believed it was not a breach of the standard of care for Dr. Barre, to have not detected the hairline fracture in the initial x-ray. Dr. Edward Neupert, III, an oral and maxillofacial surgeon from Lafayette, also testified that the first x-ray does not show an obvious hairline fracture. Dr. Chris Brown, a general dentist from New Orleans and one of the members of the medical review panel, testified that he did not see a fracture on the first x-ray, and that he does not believe the first x-ray shows .a fracture. He also did not believe that Dr. Barre breached the standard of care.
■ Also disputed is whether or not Ms. Davis reported to Dr. Barre a recent jaw trauma. Ms. Davis testified that she told Dr. Barre that she injured her jaw while rough-housing- or playing with her nephews. She also introduced evidence of the intake questionnaire showing "that she had marked boxes for “jaw pain” and “jaw, head, or neck injury.” Dr. Barre testified that he asked Ms. Davis about the boxes marked and that she' denied any recent acute jaw injury and claimed only that her jaw popped while eating. Dr-. Barre’s handwritten notes from ■ the procedure state only that the patient claimed she heard a “pop” while eating. ■ His notes make no mention of Ms. Davis reporting a history of rough-housing or playing with her nephews. Ms. Davis argues that the only logical conclusion which can be drawn from this absence is that she told Dr. *284 Barre of the rough-housing and Dr. Barre deliberately chose not to include that in the patient notes. However, another | ylogical explanation for the absence of any reference to rough-housing is that Ms. Davis did not report such an incident to Dr. Barre.
According to medical records from LSU Medical Center, Ms. Davis reported to the doctors there that she was wrestling, rough-housing, or goofing around with her family on Saturday and woke up on Sunday with jaw pain, but did not recall any acute trauma.
Our review of the record indicates that there was a reasonable factual basis for the jury’s finding that Dr. Barre did not fail to use reasonable care and diligence in treating Ms. Davis. While there was expert testimony which opined that Dr. Barre should have seen the hairline fracture in the first x-ray, there was also countervailing expert testimony that the hairline fracture was not obvious or evident in the first x-ray. Likewise, while Ms. Davis testified that she had advised Dr. Barre of recent jaw trauma, Dr. Barre testified that Ms. Davis denied any acute jaw trauma. When the experts’ opinions are in conflict concerning compliance with the applicable standard of care, the trial court’s determinations on this issue will be granted great deference. It is the sole province of the trier of fact to evaluate the credibility of such experts and their testimony. James v. Gordon, 95-1472 (La. App. 3 Cir. 12/4/96), 690 So.2d 787; Charpentier v. Lammico Ins. Co., 606 So.2d 83 (La.App. 3 Cir.1992); Pinnick v. Louisiana State University Medical Center, 30, 263 (La.App.2d Cir.02/25/98), 707 So.2d 1050; Keeslar v. McHugh, 44,641 (La.App. 2 Cir. 09/30/09), 24 So.3d 933. We therefore affirm the jury’s determination that Dr. Barre did not breach the applicable standard of care in his treatment of Ms. Davis.
Regarding Ms. Davis’s second assignment of error, Louisiana Code of Civil Procedure article 1920 provides that court costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the Iscourt may render judgment for costs, or any part thereof, against any party, as it may consider equitable. The trial court’s assessment of costs can only be reversed upon a showing of an abuse of discretion. Cajun Electric Power Cooperative v. Owens-Corning Fiberglass, 616 So.2d 645 (La.1993); Lynch v. Hanover Insurance Company, 611 So.2d 121 (La.App. 5 Cir. 1992).
Ms. Davis argues that she should not have to pay these costs because evidence shows that a third party insurer, Fortress Insurance Company, paid some of those costs on defendants’ behalf. Evidence shows that these were costs incurred in defense of Ms. Davis’s claim; whether or not the bills for these costs were paid directly by defendants or by their insurer is immaterial. The trial court’s August 5, 2015 judgment on the Rule to Tax Costs awards costs to defendants, Dr. Barre and Barre Dental Care, Inc. Regardless of the language used by defendants in their Rule to Tax Costs, a plain reading of the judgment does not show that the costs have been awarded to any party other than defendants. We find no abuse of discretion in the trial court’s award of costs.
DECREE
For the foregoing reasons, the trial court’s judgments implementing the jury verdict in favor of defendants and award *285 ing costs to defendants are hereby affirmed.
AFFIRMED